RHODE ISLAND HOSPITAL TRUST COMPANY, *Ex'r vs.*
JOHN F. LETENDRE.

AUGUST 4, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an action of assumpsit by the executor under the will of the deceased payee of a promissory note against the maker thereof. The case was tried before a justice of the superior court sitting without a jury and resulted in a decision for the defendant. The case is here solely on plaintiff's exception to such decision, all other exceptions in its bill of exceptions being waived since it neither briefed nor argued them.

Plaintiff's cause of action arose out of the following

undisputed facts. On July 10, 1942, for value received, defendant executed his note in the sum of $5200 payable on demand to Joseph E. Kelly, sometimes referred to herein as the deceased. On November 16, 1942 Kelly deceased and thereafter plaintiff duly qualified as his executor. Among deceased's personal effects plaintiff found the above-described note bearing thereon no evidence of payment either in whole or in part. Plaintiff accordingly presented it for payment, but defendant refused to honor it claiming that he had paid Kelly in his lifetime. Thereupon, on December 7, 1943, plaintiff brought the instant action and filed the usual declaration in assumpsit to which defendant pleaded the general issue. On that issue the case proceeded to trial in the superior court.

At the trial, after plaintiff had presented the note and rested, defendant admitted the validity of the note but set up the affirmative defense of payment. In proof of such defense he testified that he paid Kelly $2500 in cash in the clubhouse at the Narragansett race track on September 26, 1942, and that he paid him another $2500 in cash at his, defendant's, office in the Blackstone Hotel in Woonsocket on September 29, 1942. On neither occasion did he take a receipt for such payment. There were no witnesses to the first payment.

The second payment was made in the presence of James P. Morley and James Jannings, according to their testimony and that of the defendant. The latter testified that on that occasion he brought to his office $2500 in $100 bills; that Kelly was in the office with Jannings when he, the defendant, arrived; that he told Kelly he was going to settle with him and called for Morley who was the manager of the hotel; that Morley came into the office and that he, defendant, told Morley to get Kelly's account with the hotel; that Morley did so and stated the balance due was $286.08, whereupon defendant said that it was "paid"; that he gave Kelly the $2500 and when Kelly said he did not have the note with him he, defendant, told him

to "bring it in or destroy it." He admitted that he had never thereafter asked Kelly for the note.

Morley testified that he marked Kelly's account paid and that he also noted thereon a payment that day to Kelly of $2500. On cross-examination he admitted that the latter entry on the hotel accounts of a personal matter not pertaining to a credit in favor of the hotel in its account with Kelly was unusual. He further testified that he saw the $2500 in the office but did not see defendant give it to Kelly.

Jannings testified that he was talking to Kelly in the defendant's office about noon on September 29, 1942 when defendant came in and said to Kelly: "Looks like we are going to even up things, Joe." He also stated that defendant took three packages of money out of his pocket and placed them on the desk in his office and that one package contained $500 and the other two $1000 each. He further testified that defendant gave this money to Kelly and that he heard Kelly say he did not have the note with him and heard defendant reply: "Well, Joe, you can burn it up. We are all even."

In rebuttal of defendant's evidence of payment plaintiff presented the testimony of four persons that on divers occasions in October and November 1942 Kelly had shown them the note and stated that defendant had not paid it. Mrs. Mary L. Flege testified that on the afternoon of November 14, 1942 while riding with Kelly and his wife to the Pascoag race track he stated that defendant had not paid the note, and that while playing bridge at his home on the evening of the same day he repeated the statement in the course of some remarks about not being able to collect money he had loaned.

Dorothy Kolseth, who was the deceased's widow but had married Karl Kolseth before the trial, testified that sometime in July 1942 defendant came to their home in Slatersville seeking to borrow money and that she urged her deceased husband not to lend him any more money unless

he got a note; that defendant had already obtained two loans without any security and he had not paid them; and that this time the deceased did get a note for $5200 which covered all of defendant's loans and that he showed it to her. She also testified that from time to time thereafter she inquired if the note had been paid and each time he said that it had not. The last of such occasions was on November 14, 1942 on the ride to the Pascoag race track in the company of Mrs. Flege.

Karl Kolseth testified that on two occasions in October and November 1942 Kelly had stated to him that defendant owed him $5200 on a note. Kelly first showed the note to him, he said, about the middle of the racing meet at Pascoag in October of that year. He also testified that Kelly spoke of it again in the clubhouse dining room at Pascoag on November 14, 1942, and that the occasion for his mentioning it then was that Kelly was discussing with him, Kolseth, his intention to buy some race horses when he collected defendant's note.

C. Palmer Sowers testified by deposition that three or four days before Kelly's death he had shown him, Sowers, defendant's note for $5200 and complained that he had not been paid.

Those declarations of nonpayment of the note were authorized as legal evidence by general laws 1938, chapter 538, §6, which reads as follows: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." Having been admitted they were entitled to be treated like other admissible evidence. True, they were to be weighed with caution, *Paulson* v. *Paulson*, 50 R. I. 86, but not disregarded unless the witnesses were found by the trial justice not to be worthy of credence.

Plaintiff contends that the trial justice did not give full effect to §6 and that he misconceived or disregarded the evi-

dence in its favor. We think there is merit in that contention. After a careful reading of the transcript and the trial justice's decision it appears to us that he misconceived the nature of plaintiff's rebuttal evidence and failed to follow the law applicable thereto. The witnesses in rebuttal were not drawing conclusions, as the trial justice says in his decision, but were testifying to facts within the personal knowledge of the deceased as much as if he were actually testifying himself. Those declarations were testified to as having been made by him at a time prior to the commencement of the instant action. By force, therefore, of the statute this otherwise hearsay testimony is made legal evidence and should have been considered with all other evidence in the case by the trial justice in reaching his decision. Such is the view taken in other jurisdictions where testimony of this nature has been legalized by statutes similar to ours. *George* v. *George,* 186 Mass. 75; *Kulchinsky* v. *Segal,* 307 Mass. 571; *Furcolo* v. *Auto Rental Co.,* 110 Conn. 540.

We think that such rebuttal testimony, if believed, constituted important evidence on the issue of payment and, therefore, the trial justice's errors in the above respects had a vital effect upon his decision. Hence we are clearly of the opinion that it must be set aside.

The next question is whether we should now undertake to weigh the evidence ourselves and finally decide the case or remit it to the superior court for a new trial. Plaintiff urges us to decide the case because the main issue is the credibility of the defendant who has deceased since the trial in the superior court. He can no longer be seen and heard by the trial court, plaintiff points out, and therefore since the justice presiding at a new trial would have to read the transcript of defendant's testimony now before us, this court is in as good a position as a justice of the superior court would be to decide the merits of the case. While there may be some merit in this contention we think it overlooks the fact that there is also an important question of credibility to be determined as far as the rebuttal wit-

nesses are concerned. This makes us question the advisability of this court deciding from the cold record a case in which the credibility not alone of the defendant but of all the witnesses may play a predominant part in the decision. Ordinarily we should prefer to end the case but in the circumstances we are of the opinion that justice will be better served by remitting it to the superior court for a new trial.

However, since a serious question has been argued here as to whether the burden of proof is on the plaintiff or defendant we think we should settle that question before the case is tried again. Defendant has admitted the validity of the note and set up the affirmative defense of payment. In such a case this court has held that the defendant has the burden of proof. *Atlas Bank* v. *Doyle,* 9 R. I. 76. Defendant concedes that such is the law according to the decisions of this court but contends that it is erroneous and cites the following cases in support of his position. *Tenney* v. *Knowlton,* 60 N. H. 572; *Farmers' Loan & Trust Co.* v. *Siefke,* 144 N. Y. 354; *Schmitt* v. *Redd,* 151 Va. 333.

The first two cases are not in point since the defense there raised was not payment but invalidity of the note. Such a defense does not admit the original cause of action as does the defense of payment. Contrary to the Virginia case above cited it is generally held that a defense which assumes or admits the original cause of action but is based upon a subsequent fact or transaction which goes to qualify or defeat such cause of action must be proved by the defendant, as it tenders a new and independent issue. The rule is that he who tenders such an issue must support it. The defense of payment is an issue of that kind in an action against the maker of a note, and the burden is upon him to prove it. 11 C.J.S. Bills and Notes §662, 101. The great weight of authority supports this view and we see no reason why we should upset the established rule in this jurisdiction.

418

The plaintiff's exception to the trial justice's decision is sustained, and the case is remitted to the superior court for a new trial in accordance with this opinion.

*Tillinghast, Collins & Tanner, Harold E. Staples, Westcote H. Chesebrough,* for plaintiff.

*McMahon & McMahon, Raymond J. McMahon, Jr.,* for defendant.