**RHODE ISLAND HOSPITAL TRUST COMPANY and Marjorie G. Horton, Co-Executors under the Will of Holton W. Horton, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2899.**

United States District Court
D. Rhode Island.
April 21, 1965.

⊕—997

Walter F. Gibbons, James T. Lodge, Joseph G. Kinder, of Armstrong, Gibbons & Lodge, Providence, R. I., for plaintiffs.

Thomas F. Field, Atty., Dept. of Justice, Washington, D. C., Raymond J. Pettine, U. S. Atty., William J. Gearon, Asst. U. S. Atty., Providence, R. I., for defendant.

DAY, District Judge.

This is an action brought under the provisions of 28 U.S.C.A. § 1346(a) to recover the sum of $14,185.85 in Federal estate taxes and interest thereon of $1004.67 alleged to have been erroneously assessed against and collected from the estate of Holton W. Horton, deceased. Timely claim for the refund thereof was made by the plaintiffs and denied. By agreement of the parties, the matter has been submitted to this Court for decision upon an agreed statement of facts and the depositions of certain witnesses.

The only question presented for determination is whether or not the proceeds of a certain life insurance policy were includable in the gross estate of the decedent, Holton W. Horton, for tax purposes pursuant to the provisions of Section 2042 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2042.

According to the agreed statement of facts, the decedent was born on March 29, 1906. He was one of two sons born to Charles A. Horton and his wife, Louise K. Horton. His brother, A. Trowbridge Horton was born on November 1, 1904 and is still living. Louise K. Horton died on January 9, 1952. Holton W. Horton died on April 1, 1958, and Charles A. Horton on October 2, 1961.

At the time of the death of Holton W. Horton there was in full force and effect a policy of life insurance on his life in the face amount of $50,000, issued by the Massachusetts Mutual Life Insurance Company. This policy had been issued on April 3, 1924 when Holton W. Horton was eighteen years old. An identical policy was issued by said company on the life of his brother, A. Trowbridge Horton, on or about the same date. The beneficiaries of each of these policies,

when issued, were Charles A. Horton and Louise K. Horton, in equal shares, or the survivor of them.

Both of said policies were purchased by Charles A. Horton so that there would be funds available for Louise K. Horton if her husband and either or both of her sons should die during her life-time. Charles A. Horton kept said policies in his safe deposit box and paid all the premiums thereon until his death in October, 1961. He regarded both policies as belonging to him and not to his sons. Since his death, A. Trowbridge Horton has paid the premiums on the policy insuring his life and has had possession of said policy since November, 1962 when it was delivered to him by the executors of his father's estate.

Subsequent to the death of Louise K. Horton, on January 9, 1952, Charles A. Horton was the sole beneficiary of said policy on the life of the decedent, and continued to be the sole beneficiary thereof until March 25, 1952 when Holton W. Horton, at the direction of his father, executed a change of beneficiary of said policy. (Exhibit 1). Under the terms of this change of beneficiary, upon the death of Holton W. Horton, the proceeds of said policy were to be retained by the insurer and interest thereon was to be paid monthly to Charles A. Horton with the right in him to withdraw the whole or any part of the proceeds retained by said insurer, or elect settlement under any other optional settlement contained in said policy. Said change of beneficiary further provided that if said Charles A. Horton should elect settlement under another option provided in said policy, then upon his subsequent death, any remaining unpaid installments provided by said policy under such other option so elected should be paid as they respectively fell due to the insured's wife, Marjorie G. Horton, if living, otherwise to A. Trowbridge Horton, with the right in each of them at any time while receiving such installments to withdraw the then present value of her or his share of the remaining installments.

This change of beneficiary remained in effect until the death of Holton W. Horton on April 1, 1958. Pursuant to its terms, the Massachusetts Mutual Life Insurance Company thereafter paid the face amount of said policy to his father, the said Charles A. Horton.

As hereinbefore recited, the parties have agreed that this case be submitted for decision on the basis of a trial record consisting of said agreed statement of facts which I have just summarized, (2) the depositions of Marjorie G. Horton and A. Trowbridge Horton, and (3) the deposition of Walter F. Gibbons, Esquire (subject to my ruling on the admissibility of the testimony of Mr. Gibbons).

In her deposition, Marjorie G. Horton, widow of Holton W. Horton, testified that she had never seen the policy involved herein; that many years before his death Holton had mentioned it to her and that he had told her that "his father had as an investment a policy on himself and another on 'Trow' (his brother) but that in no way did it mean anything to us or would it ever. It was completely his." She also testified that Holton W. Horton had three small policies of life insurance on his own life, wanted additional life insurance but could not obtain it because of his health.

A. Trowbridge Horton, in his deposition, testified that while he and his late brother were students at a local preparatory school in 1924, his father purchased identical policies of life insurance on their respective lives and that "we did not recognize that we became the owners of those policies"; that his father paid all the premiums and kept them in a safe deposit box to which neither he nor his brother ever had access. He also testified that he never knew he could have obtained a loan on said policy, and, accordingly, never asked his father if he could borrow upon it. In addition, he testified that his father purchased said policies upon his life and that of his brother to make provision for his mother in case he, his father and his brother predeceased her; that he never discussed

the policy involved herein with his brother and that his only conversation with his father about said policies, prior to his mother's death, was when his father told him he was paying premiums for insurance on his life and that of his brother; and that after his mother's death and without any discussion between them as to the advisability of a change in the beneficiary named in the policy on his life, his father directed him to go to the local office of the insurance company and to sign a form changing the beneficiary in said policy. He also stated that he had no discussion with his father after his brother's death about the policy on the latter's life and stated that he always considered the policy on his own life to be the property of his father.

After an examination of the testimony of Walter F. Gibbons, Esquire, I am of the opinion that his testimony as to the declarations made to him by Charles A. Horton relative to said policies is admissible under the provisions of Rule 43(a) of the Federal Rules of Civil Procedure. Although admittedly hearsay, I am satisfied that they were made in good faith, prior to the commencement of this action, and upon his personal knowledge. Such declarations would be clearly admissible in evidence in the courts of Rhode Island, pursuant to the provisions of Section 9–19–11 of Chapter 19 of the General Laws of Rhode Island, 1956. Foster v. De Andrada, 1959, 88 R.I. 442, 149 A.2d 713; Rhode Island Hospital Trust Company v. Letendre, 1950, 77 R.I. 411, 75 A.2d 203.

Mr. Gibbons, one of counsel for the plaintiffs, testified in his deposition that he first met Charles A. Horton when he interviewed him on June 5, 1959 in his investigation of the facts "surrounding an insurance policy involved in the estate of Holton Horton"; that Charles A. Horton told him that when his two sons were nineteen and eighteen years of age respectively, it occurred to him that it would be a good idea to insure the lives of his sons so that if he were to die before his wife and if his sons also predeceased her, there would be funds available for their mother; that he had his two sons execute applications for policies that were subsequently issued on their respective lives; that he paid the initial and all subsequent premiums thereon, retained the policies and that the sons saw said policies only on one occasion, prior to the death of Holton W. Horton; that there was no discussion between him and his sons about said policies until 1952 when his wife died; that after her death, the local agent of the insurer suggested that a change of beneficiary in both policies would be advisable and that he thereupon instructed both of his sons to go to the office of said agent and sign forms for a change of beneficiary on each of said policies, and that his sons complied with his instructions. Mr. Gibbons also testified that Mr. Horton told him that there was no question about his intention that said policies were his property and that it was "out of the question" that either of his sons would have ever claimed said policies belonged to them individually. Mr. Gibbons further testified that Mr. Charles A. Horton was a prominent, successful business man with the reputation of being a man of strong convictions and of vigorous action.

Section 2042, Title 26 U.S.C.A., Revenue Act of 1954, dealing with taxation under the Federal Estate Tax of the proceeds of life insurance upon a decedent's life, provides that the value of the gross estate of a decedent shall include (under subsection 1) the amount receivable by the executor as insurance under policies on the life of the decedent and (under subsection 2 thereof) "the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death *any of the incidents of ownership,* exercisable, either alone or in conjunction with any other person." (Emphasis added).

The plaintiffs contend that although technically the right to change the beneficiary, as well as such other rights as to obtain a loan against the surrender value of the policy or to assign it existed in

the policy in favor of the decedent, the decedent, under all of the facts in this case, was only the nominal owner thereof, the policy in reality was wholly the property of his father, the said Charles A. Horton, and that it was the clear intent of the decedent and his father that this be so. They contend that under the circumstances the decedent did not, in fact, possess any of the incidents of ownership in said policy at his death and that the proceeds of said policy were not includable in his gross estate under the provisions of said Section 2042(2) of Title 26 U.S.C.A.

The defendant contends that said proceeds are includable in the gross estate of the decedent because his right to change the beneficiary of said policy and the existence of the above described formal rights in said policy were incidents of ownership possessed by him under the provisions of said Section 2042 (2).

Section 20.2042–1 of the Treasury Regulations promulgated under Section 2042 (2) of Title 26 reads as follows:

"PROCEEDS OF LIFE INSURANCE

"(c) Receivable by other beneficiaries

\*     \*     \*     \*     \*

"(2) For the purposes of this paragraph, the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. Similarly, the term includes a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder."

The power to change the beneficiary has been uniformly held to be an incident of ownership. Farwell v. United States, 1957, 7 Cir., 243 F.2d 373; Fried v. Granger, 1952, D.C.Pa., 105 F. Supp. 564, aff'd 1953, 3 Cir., 202 F.2d 150; Hall v. Wheeler, 1959, D.C.Me., 174 F.Supp. 418. However, there is an exception to this rule as recognized and applied in National Metropolitan Bank of Washington v. United States, 1950, 115 Ct.Cl. 396, 87 F.Supp. 773; Estate of Doerken v. Commissioner, 1942, 46 B.T.A. 809. If, in fact, the ownership by the decedent of the right to change the beneficiary of said policy or of any other rights in said policy was nominal only, neither he nor his estate can be said to have been possessed of any of the incidents of ownership thereof within the meaning of said Section 2042(2). Estate of Piggott v. Commissioner, 1965, 6 Cir., 340 F.2d 829; Hall v. Wheeler, supra; Estate of Michael Collino v. Commissioner, 1956, 25 T.C. 1026; National Metropolitan Bank v. United States, supra; Estate of Edward Doerken v. Commissioner, supra. And whether the decedent in this case did not possess any of the various incidents of ownership of said policy is a question of fact with the burden of proving that he did not possess any of them being upon the plaintiffs. Estate of Grant H. Piggott v. Commissioner, supra; Hall v. Wheeler, supra; Fried v. Granger, supra; Estate of Michael Collino v. Commissioner, supra; Estate of Edward Doerken v. Commissioner, supra.

In my opinion the plaintiffs have sustained the burden of proof imposed upon them. A careful consideration of all the evidence and the reasonable inferences to be drawn from it satisfies me that said policy of insurance did not belong to the decedent, but, on the contrary, belonged to his father. Said policy was in effect for almost thirty-four years at the time of the death of Holton W. Horton. At no time was it in his possession; and never did he assert any claim whatever of ownership thereto. On the contrary, he disclaimed any ownership

therein, as did his brother, with respect to an identical policy which their father had purchased upon his life for a similar purpose. The decedent on one occasion only exercised one of the "legal incidents of ownership" of said policy, when, at his father's direction after his mother's death he signed a form for changing the beneficiary of said policy. In exercising this right it cannot fairly be said, as the defendant contends, that he was exercising it in conjunction with his father. The evidence and the reasonable inferences to be drawn from it convince me beyond any doubt that he was then acting at the direction and as the instrument of his father who was the real owner of the various incidents of ownership in said policy.

In my opinion, the plaintiffs have clearly sustained the burden of proving that the decedent and his father intended always that the decedent was not to possess any of said incidents of ownership in said policy. Neither the decedent, who was only the nominal owner of said policy, nor his estate possessed any right to the economic benefits thereof. Since the decedent's father was actually the real owner of the various incidents of ownership in said policy, I find and conclude that the proceeds thereof were not properly includable in the gross estate of the decedent for tax purposes pursuant to the provisions of said Section 2042 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 2042.

In conclusion, I find that the plaintiffs are entitled to recover the amount paid by them as taxes and interest by reason of the erroneous inclusion of the proceeds of said life insurance policy in the gross estate of the said Holton W. Horton, together with interest thereon from the date of its payment. Within twenty days from the date hereof, counsel for the parties will present to me a computation of the total amount which the plaintiffs are entitled to recover in accordance with my conclusion hereinbefore stated and thereupon judgment will be entered in favor of the plaintiffs in said amount.