Howard J. LAMADE, Jr. and West Branch Bank and Trust Company, now Northern Central Bank and Trust Company, Co-Executors of the Estate of Howard J. Lamade, Deceased, Plaintiffs,

v.

Richard P. BROWNELL, Defendant.

Civ. A. No. 8063.

United States District Court
M. D. Pennsylvania.

Sept. 21, 1965.

692

Furst, McCormick, Muir, Lynn & Reeder, Williamsport, Pa., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty Gen., C. Moxley Featherston, David A. Wilson, Jr., Edward J. Snyder, Attys., Dept. of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., Scranton, Pa., for defendant.

FOLLMER, District Judge.

This is a suit for a refund of federal estate taxes collected by defendant from plaintiffs. The case was tried to the Court without a jury.

From the pleadings, the testimony, a Stipulation, the briefs and arguments of counsel, the Court makes the following:

### FINDINGS OF FACT

1. The plaintiffs are Howard J. Lamade, Jr., and the West Branch Bank and Trust Company, now Northern Central Bank and Trust Company. Both are residents of Williamsport, Pennsylvania. They are and they bring this suit as the co-executors of the estate of Howard J. Lamade, who died testate at Williamsport on May 14, 1958.

2. The defendant is Richard P. Brownell who resides at 1744 Capouse Avenue, Scranton, Pennsylvania. He was the District Director of Internal Revenue in and for the District of Scranton, Pennsylvania, from September 10, 1956 to April 30, 1962.

3. On July 24, 1959, the plaintiffs timely filed with the defendant a federal estate tax return for the estate of their decedent and therewith paid to the defendant $26,914.32 in federal estate taxes. Additional federal estate taxes were paid to the defendant with respect to the estate on July 26, 1960, in the amount of $12,757.47 together with interest of $688.48.

4. Pursuant to the defendant's letter of July 25, 1960, advising the plaintiffs of an "unagreed deficiency" in the estate of Howard J. Lamade, the plaintiffs filed a protest and on February 3, 1961, paid to the defendant $5,967.43 in federal estate tax together with interest of $490.14. These amounts were paid with respect to that portion of the "unagreed deficiency" attributable to the inclusion in the gross estate of Howard J. Lamade for federal estate tax purposes of the value of an ordinary life insurance policy issued in 1955 by the Metropolitan Life Insurance Company and numbered 21,851,253A. This policy was in the face amount of $40,000.00.

5. On October 2, 1961, the plaintiffs filed a claim for refund with the defendant on Form 843 seeking a refund of the $5,967.43, together with interest. The defendant did not allow this claim.

6. On July 14, 1937 the decedent applied to the Metropolitan Life Insurance Company for a $50,000.00 term policy on his life and as of that date said insurance company issued to him policy No. 11,-651,016A for $50,000.00 on a renewable convertible term plan.

7. On August 16, 1937 the decedent absolutely assigned said $50,000.00 policy and any policies which might be issued subsequently, pursuant to any right to convert said term policy, to Muriel B. Lamade, the insured's wife.

8. On August 26, 1937 the insured's wife as settlor created a revocable Insurance Trust with George R. Lamade and West Branch Bank and Trust Company as trustees in which the trust res was said original $50,000.00 term policy No. 11,651,016A.

9. In 1939 Muriel B. Lamade, the insured's wife, applied for a change in said policy into a $10,000.00 whole-life-paid-up-at-85 policy and a $40,000.00 convertible term policy on the original plan.

10. In 1939 the Metropolitan Life Insurance Company issued, pursuant to said

change request by the wife, two policies, both retroactive to the original date of issue, July 14, 1937, one policy No. 12,-652,575A for $10,000.00 on the whole-life-paid-up-at-85 plan and a $40,000.00 policy No. 12,652,576A still on the original convertible term plan.

11. In 1939, after the reissuance of the $10,000.00 whole-life-paid-up-at-85 policy and the $40,000.00 term policy, the reissued policies were substituted as the trust res by the insured's wife with the trustees under said Life Insurance Trust Agreement.

12. On April 8, 1949 the insured's wife revoked the Insurance Trust Agreement, designated her children, Howard J. Lamade, Jr. and Clara Anne Lamade (now Robison), as the beneficiaries on said $40,000.00 term policy and named herself beneficiary on the $10,000.00 whole-life-paid-up-at-85 policy.

13. On April 20, 1949 the insured's wife absolutely assigned said $40,000.00 term policy, No. 12,652,576A, to her children, Howard J. Lamade, Jr. and Clara Anne Lamade (now Robison).

14. On August 11, 1955 a Change Application executed by Howard J. Lamade, the insured, and Howard J. Lamade, Jr. and Clara Anne Lamade Robison, the owner-assignees, was filed with the Metropolitan Life Insurance Company directing that the policy be changed in one particular, from $40,000.00 term to 20-pay life.

15. The Metropolitan Life Insurance Company acted on said Change Application and issued as of July 14, 1955 policy No. 21,851,253A on the life of the decedent.

16. The original $50,000.00 term policy and its three successor policies were held from 1937 to the insured's death by Northern Central Bank and Trust Company and its predecessor in safekeeping for the owners of the policies.

17. The insurance company form for change of the policy executed August 11, 1955 required on its face that the insured and all assignees sign the form.

18. If the insured had refused to sign the Change Application of August 11, 1955, the insurance company would have honored the Change Application signed only by the assignee-owners, Howard J. Lamade, Jr. and Clara Anne Robison.

19. On the death of the insured on May 14, 1958, the Metropolitan Life Insurance Company paid Muriel B. Lamade, the owner of the $10,000.00 whole-life-paid-up-at-85 policy, the sum of $10,-000.00 and paid to Howard J. Lamade, Jr. and Clara Anne L. Robison, the owner-assignees of the $40,000.00 20-pay life policy, the sum of $40,000.00.

20. The District Director of Internal Revenue taxed as part of the estate of said decedent $40,000.00 in proceeds of policy No. 21,851,253A issued by Metropolitan Life Insurance Company on the life of the decedent.

21. The 20-pay life $40,000.00 policy No. 21,851,253A issued as of July 14, 1955 provided in part "The right on the part of the Insured to change the Beneficiary is reserved" and also provided in part "If this policy is assigned, the rights the Insured and the Beneficiary and any contingent Beneficiary would otherwise have are subject to the rights of the assignee of record" and also provided in part "The Policy must be presented to the Company at its Home Office for endorsement of any change of Beneficiary or contingent Beneficiary except that if the right to change the Beneficiary or contingent Beneficiary has been reserved, the Company may, in its discretion, waive this requirement."

22. The absolute assignment by the Insured dated August 16, 1937 to his wife of the original policy and all policies issued pursuant to the right to convert therein was duly filed with the insurance company.

23. The absolute assignment of Muriel B. Lamade of the $40,000.00 term policy on April 20, 1949 was duly filed with the insurance company.

24. As of the date of issue on July 14, 1955 policy No. 21,851,253A for $40,-000.00 was an assigned policy.

25. At the time of the execution of the Change Application in 1955 to change the $40,000.00 term policy to a $40,000.00 20-pay life policy, no discussion was had by the then owners of the policy, the son and daughter of the Insured, with anyone concerning any change in any of their rights under the policy and particularly there was no discussion by them with anyone concerning their right to change the beneficiary, to borrow on the policy, surrender the policy, elect optional settlements, or any other of their rights under the policy.

26. At the time of the execution of the Change Application in 1955, the insured's children gave no oral or written direction to any person, including the Insurance Company and its agents, to retransfer to the insured the right to change the beneficiary or any other ownership right.

27. The decedent's children, Howard J. Lamade, Jr. and Clara Anne Robison, never reassigned the policy in question to the insured decedent.

28. The insured from September, 1937 to the date of his death in 1958 never exercised or attempted to exercise any incidents of ownership in any of the four policies above mentioned.

29. From 1938, if the decedent had attempted to change the beneficiary, borrow on the policy, cash the policy, or exercise any other incidents of ownership in the policy, the insurance company would have disregarded the attempt.

30. The insured and his children paid the 1955 annual premium on the $40,000.00 20-pay life policy, the insured paying $1,377.60 in cash and the children paying $2,175.20 by way of credit arising out of the reserve on the $40,000.00 term policy.

31. The insured paid the premiums on the $40,000.00 20-pay life policy for 1956 and 1957.

32. The insured's children paid the premiums on the $40,000.00 term policy for the years 1949 through 1954.

33. The premium to have converted the term policy to the original date of issue in 1937 would have been approximately $25,000.00.

34. The Metropolitan Life Insurance Company had in 1955 a practice, upon the conversion of a term policy, of using the standard policy form and by reference to provisions therein, attachments to prior policies in the chain, and absolute assignments of the policies, to define the rights of all persons interested in the converted policy.

35. The above practice of the Metropolitan Life Insurance Company is one which prevails generally in the insurance industry and is based upon (a) the need for reducing costs and (b) the desire to eliminate human error as to substantive rights of parties upon the conversion of policies.

36. There was no intent upon the part of the Metropolitan Life Insurance Company or any of its agents to grant to the insured in the converted $40,000.00 20-pay life policy any right to change the beneficiary.

37. The insurance company and the insured's children, the owners of the $40,000.00 20-pay life policy, understood that the insured had no right to change the beneficiary under said policy.

38. The Metropolitan Life Insurance Company and the insured's children, the owners of the $40,000.00 20-pay life policy understood that the insured had no ownership rights whatsoever in said policy.

## DISCUSSION

In 1937, twenty-one years prior to his death, decedent purchased from Metropolitan Life Insurance Company policy No. 11,651,016A in the sum of $50,000.00. Approximately one month later insured assigned absolutely the said policy to his wife, Muriel B. Lamade. On August 18, 1939 the assignee wife applied to the insurance company to change the above mentioned policy from one $50,000.00 policy to two policies, one a $10,000.00 whole-life-paid-up-at-85 and the other a $40,000.00 convertible term policy. Accordingly, Metropolitan then (in 1939) issued the second policy, No. 12,652,575A, bear-

ing same issue date as first policy, 1937, $10,000.00 whole-life-paid-up-at-85 and in which the wife was shown as assignee. This policy is not here in issue. Also in 1939 Metropolitan issued a third policy, No. 12,652,576A, bearing issue date as first policy, 1937, $40,000.00 renewal convertible term, in which the wife was shown as assignee. On April 20, 1949, this policy was assigned by the wife to Howard J. Lamade, Jr. and Clara Anne Lamade, now Clara Anne Lamade Robison, children of insured in equal shares. On August 11, 1955, decedent's children converted the term policy to a 20-pay life policy (No. 21,851,253A), the reissued policy being dated July 14, 1955.

The last or fourth policy contained these provisions on page 3 thereof:

"1. Rights Under Policy—If the right to change both the Beneficiary and contingent Beneficiary, if any, has been reserved, the Insured alone may exercise all rights, privileges, or options granted by this Policy. * * * If this Policy is assigned, the rights the Insured and the Beneficiary and any contingent Beneficiary would otherwise have are subject to the rights of the assignee of record.

"2. Change of Beneficiary or Contingent Beneficiary—A new designation of Beneficiary or a new designation of contingent Beneficiary may be made by the person or persons entitled to do so (see Provision 1), with or without reserving the right of change thereafter, * * *."

Similar language reserving to the insured the right to change the beneficiary is in all four policies.

The absolute assignment of the insured of the first policy, issued in 1937, reads in part as follows:

"For Value Received I hereby assign Policy No. 11651016–A *And any other policy subsequently issued in lieu thereof* and pursuant to any right to convert granted therein, issued by the Metropolitan Life Insurance Company of New York on

the Life of HOWARD J. LAMADE with all the proceeds thereof and all sums of money, interest, benefit and advantages whatsoever accrued and to accrue thereunder unto MURIEL B. LAMADE, address: 270 Grampian Boulevard, Williamsport, Pa., My wife, and to her executors, administrators, successors or assigns * * *." (Emphasis supplied)

The fact that the fourth policy issued in 1955 contained these words, "The right on the part of the Insured to change the Beneficiary is reserved" is in my opinion under the facts and circumstances of this case of absolutely no significance.

Here we have a continuous chain of policies. For twenty-one years, i. e. from the date of the issuance of the first policy until his death, insured at no time had physical possession of any of the policies nor did he at any time attempt to exercise any dominion over them. His attitude toward the policies was in strict compliance with the absolute assignment of the parent policy. Actually for twelve years the policies were in the possession of a trustee bank under the terms of a trust set up by the original beneficiary and assignee, the wife of decedent, and thereafter in the possession of the same bank for six more years, or until the death of insured, for safekeeping.

Defendant makes much of the fact that insured signed as the insured the application of Howard J. Lamade, Jr. and Clara Anne L. Robison as the owners on August 11, 1955 for change of policy from term to 20-pay life policy.

Testimony of a Division Manager of Metropolitan Life Insurance Company was that he was the head of the Beneficiary and Assignment Division; that he has been with the company for thirty-eight years and in his present position for seven and one-half years; that in the course of a business year the company receives in excess of two hundred thousand requests for policy changes; that as the result of said requests the company actually processes in excess of one hundred thousand requests; that in order to

handle these requests as economically as possible, to assist in the determination as to who has an equitable interest in the policy and for identification purposes, the company requires the signature of the insured in all cases even though at times it is not necessary; that otherwise from the company's standpoint the insured's name has absolutely no significance ownershipwise; that had insured refused to sign, the company would have waived his signature; that in July of 1955 the company according to its records recognized the then owners of the policy, Howard J. Lamade, Jr. and Clara Anne L. Robison, as the ones vested with the right to change the beneficiary; that for the insured to be able to change the beneficiary, the company would have required an absolute assignment of the policy to insured and this was never done; that in his opinion there was no error by the company in issuing the last policy which shows on its face "The right on the part of the Insured to change the Beneficiary is reserved"; that that was their customary practice. Metropolitan's Division Manager further testified that it was the policy of the company to keep records of assignments for the purpose of demonstrating where the equities of ownership lie.

It is crystal clear that at no time was there ever any irrevocable designation of a beneficiary in any of the policies hereinabove described. The policy in question, uninterruptedly from the day of the original issuance, through the various changes and over a period of twenty-one years, remained an assigned policy.

In Eggleston v. Dudley, 3 Cir., 257 F. 2d 398, 400 (1958), the Court said:

"It is the law of Pennsylvania that one must interpret an instrument such as an insurance policy by first looking to the language of the contract. However, where the terms of the contract are contradictory the meaning put upon the instrument by the parties themselves is strong evidence of the correct interpretation of the instrument and will be enforced by the courts. * * * "

In National Metropolitan Bank of Washington et al. v. United States, 87 F. Supp. 773, 776–777, 115 Ct.Cl. 396 (1950), the Court said:

"The courts will look beyond the naked legal title to ascertain true ownership. * * *

* * * * * *

"We are not willing to disregard the manifest substance for a technical legal shadow. We hold that the insured did not actually possess the incidents of ownership contemplated by the taxing statute. A legal technicality is a two-edged sword. The courts in many cases have rightly sought the substance in requiring the payment of taxes even though a framework of form would have indicated otherwise. If we look behind the form for the substance to prevent tax dodging, we should do the same to prevent a wrong against the taxpayer. Schongalla v. Hickey, 2 Cir., 149 F.2d 687.

"By every rule of fair play which we have known from our youth all the way, this tax should not be exacted. The mother not only did not claim any rights in these policies, but the record abundantly shows that she did not even consider trying to exercise any privileges under them. It would have been unnatural had she done so. She regarded the policies as belonging to her son alone. That is the way both mother and son intended them, and the way they would have been expressed had the company agent carried out what he knew to be the wishes of the interested parties. The ends of justice require the refund of this tax." [1]

The unanimous opinion of the Court of Claims in National Metropolitan Bank of Washington could with slight modification be adapted to this case. There is every evidence here of a devoted husband

1. See also, Rhode Island Hospital Trust Company v. United States, D.C.R.I., 241 F.Supp. 586 (1965).

and father endeavoring to provide for his wife and his two children. At no time in a twenty-one year period from the date of the first policy until the date of his death did he by the slightest move make any change or deviation in his original absolute assignment. The only support the Government finds is the beneficiary reservation clause and the fact that insured signed the application for change preliminary to the issuance of the fourth policy. I have previously indicated that in my opinion they are both of no significance. It seems to me that the time and expense incurred by the Government in this case could better have been expended elsewhere.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and subject matter of this action.

2. The question before the Court is whether the $40,000.00 in proceeds of Policy No. 21,851,253A on the life of Howard J. Lamade, the decedent, issued by the Metropolitan Life Insurance Company were includible in the decedent's gross estate for federal estate tax purposes.

3. Policy No. 21,851,253A is interrelated to policies No. 11,651,016A and 12,652,576A from which it was converted.

4. The decedent parted with the right to change the beneficiary and all other ownership rights twenty-one years before his death by absolute assignment.

5. The payment of premiums on said policy by the decedent for the two years immediately prior to his death was by way of gift.

6. As of the date of his death, the decedent had no incidents of ownership in said policy.

7. The Commissioner of Internal Revenue incorrectly determined that the proceeds of said policy on the decedent's life were includible in the decedent's estate.

8. Plaintiffs are entitled to recover $5,967.43 with interest as provided by law, and costs.

An appropriate Order may be submitted.