Jones, Chief Judge,
delivered the opinion of the court:
This suit is for a refund of estate taxes paid as a deficiency assessment on the. proceeds of two insurance policies. The policies were on the life of Margaret E. Kelly, who died August 30, 1943. The beneficiary was her son, John S. Kelly.
The executors timely filed a claim for refund on the ground that the policies had been applied for and all premiums paid by John S. Kelly, the beneficiary, and that the decedent did not possess any of the incidents of ownership in the policies, and that the proceeds were paid directly to the beneficiary. The claim was denied.
The question is whether the proceeds of the policies were includible in the estate of Margaret E. Kelly and subject to *405 the tax provisions of Section 811 (g) of the Internal Bevenue Code as amended by the Bevenne Act of 1942.
The facts, which are not in dispute, are briefly as follows:
In 1938 Bobert W. Tharp, a life insurance salesman for The Mutual Life Insurance Company, discussed with decedent the advisability of her taking out additional life insurance. She carried only $5,000. He suggested to her that since $40,000 in life insurance .was at that time exempt from the Federal estate tax she should purchase $35,000 additional.
She was not interested.
Tharp then discussed with her son the desirability of his taking out a policy on the life of his mother, calling his attention to the tax exemption provision and also mentioning the advantage of having funds available to meet debts that might arise at decedent’s death.
The son decided to take out the insurance. When he informed his mother of his decision she acquiesced, but told him that if the policies were taken out he, the son, would have to pay the premiums.
After making this decision John S. Kelly arranged with his mother to come to the offlce of the Kelly Lumber Company, of which she was president, and sign the application and arrange for a medical examination.
At this meeting the information necessary to fill in the blanks was obtained from decedent and her son. Tharp did not at that time fill in the blanks in the application form, but instead jotted down the information on a piece of paper. Decedent signed the form in blank. Tharp completed the application by filling in the blanks after he returned to his office. John S. Kelly told Tharp that he himself was to be the beneficiary under the policies and that arrangement was satisfactory to decedent.
In filling out the form Tharp, the company agent, of his own volition, and without any instruction from decedent or her son, inserted the word “insured” in the blank space reserving benefits, options, changes in beneficiary and other privileges.
Two life-insurance policies totaling $35,000 were issued on January 21, 1938. The policies were delivered to the son, who paid the premiums stipulated therein and placed them in *406 his vault. When preparing to enter the military service he took the policies and other valuables from his vault, which was in his office, and turned them over to his mother for safe keeping. She wrote “Jack’s” on the envelope containing the policies and placed it in her safe-deposit box where it was found at the time of her death.
Upon the death of the decedent the son turned the policies over to the insurance company which duly paid him the amount, and he deposited the proceeds in his o.wn bank account. No portion of these funds was ever demanded of him by representatives of the estate.
To be includible in the gross estate of decedent the policies must have been (a) purchased with premiums paid directly or indirectly by decedent, or (b) it must be found that decedent possessed at her death incidents of ownership, exercisable by her alone or in conjunction with another person.
Manifestly they cannot be brought within the purview of subdivision (a) of section 811 (g). The question narrows to the application of subdivision (b) of that section.
We think that plaintiffs are entitled to recover. The unauthorized answers inserted in a life-insurance application by an insurance salesman, upon his own initiative, for his own personal reasons, will not serve to invest the insured with the “incidents of ownership” when there is no other substantial evidence of ownership or interest on the part of the insured.
From the evidence there can be no doubt that both Mrs. Kelly and her son intended these policies to be his and his alone. She made no effort to read the application or the policies. The son held the policies and paid the premiums. The mother recognized that John S. Kelly had the right to the benefits, told him that he could cash the policies or borrow on them, and told a disinterested third party that her son “could borrow on or cash in (the policies) and that he paid for it, so he could use it as he saw fit.” She at no time attempted to get physical possession of the policies, and when he took the policies and other valuables out of his vault before he joined the army and asked her to keep them, she placed the policies for him in her safe-deposit box and wrote his name on the envelope, thus expressly recognizing his ownership of them.
*407 The salesman admitted that he was not authorized or instructed to insert the .word “insured” in question 13 of the application; that “in view of the fact that Mrs. Kelly had shunned the purchase of insurance on her life I had figured all these things were more or less understood and that Jack was the applicant for the insurance,” and that if he (the agent) had followed the proper procedure and “had gone according to IToyle” he would have required the son to sign the premium statement; but that upon his own initiative, for personal reasons and to avoid complications that might have lost him the sale, he did not do so.
Until the son went away to war he could have prevented his mother’s exercising any rights under the policies even if she had desired to do so, since she did not have possession of them. In fact, it is probable that had the question been raised, the written instruments could have been reformed to express the real intention of the parties. We quote from 29 American Jurisprudence, Section 242, Insurance, as follows:
If an insurance policy is not that intended or does not express the actual contract intended by the parties because of the fraud or inequitable conduct of the insurer’s agent or because of the mutual mistake of the insured and such agent, a court of equity has the power to, grant a reformation of the policy so as to have therein expressed the true agreement of the parties. While there is some authority to the contrary, most courts hold that a policy may be reformed where it does not conform to the agreement of the parties although the mistake, insofar as the company is concerned, was that of a mere soliciting agent .with no power to write or to issue a policy.
For instances in which courts have permitted reformation of insurance contracts because of mistakes of the parties or the mistake of the insurance agents, see National Reserve Insurance Co. v. Scudder, 71 F. (2d) 884; Leithauser v. Hartford Life Insurance Co., 124 F. (2d) 117; Esch v. Home Insurance Co., 43 N. W. 229.
The courts will look beyond the naked legal title to ascertain true ownership. Austin National Bank v. Scofield, 84 F. Supp. 483; United States v. Burgo, 79 F. Supp. 143.
Most of the cases cited by the defendant deal with trusts. These are on a somewhat different footing. Trusts are frequently established for the primary purpose of either avoid *408 ing or reducing taxes, either income or estate or both. Naturally the courts have been inclined to construe them strictly, and have consistently held that they must be irrevocable on the part of the declarer if his estate is not to be taxed. In other words, if he retains any reversionary interest or powers of revocation or change of beneficiary whatever, the value of whatever interest is so retained shall be included in his gross estate for tax purposes. This is a natural construction in view of the modern effort to use trusts for the purpose of escaping or partially escaping taxation.
Insurance policies are on a different footing. Through the history of their development they have contained so many boiler-plate provisions and fine-print stipulations that the courts through the years have been inclined to liberally construe them in such a way as to apply the natural interpretation which the party taking out the policies had made and his understanding of the purposes for which the policies were taken out. This, too, is a natural development. The course or trend of the decisions in respect to these two classes of cases are therefore in different directions. Home Insurance Company of New York v. Sullivan Machinery Company, 64 F. (2d) 765, 767. We quote from the opinion in that case:
The failure of Failing to discover the mistake by reading the policy and to act to have it corrected, is not a bar to reformation. Mere negligence not amounting to a breach of positive duty is not a bar to reformation, especially where the other party has not been prejudiced thereby. [Citing cases.] :|: * * He had a right to assume that the Insurance Company’s agent Taft had written the endorsement in accordance with the antecedent oral agreement. [Citing cases.] Failing’s failure at the most was a mere inadvertence not amounting to a violation of a positive duty.
We are not willing to disregard the manifest substance for a technical legal shadow. We hold that the insured did not actually possess the incidents of ownership contemplated by the taxing statute. A legal technicality is a two-edged sword. The courts in many cases have rightly sought the substance in requiring the payment of taxes even though a framework of form would have indicated otherwise. If we look behind the form for the substance to prevent tax dodging, we should do *409 the same to prevent a .wrong against the taxpayer. Schongalla v. Hickey, 149 F. (2d) 687.
By every rule of fair play which we have known from our youth all the way, this tax should not be exacted. The mother not only did not claim any rights in these policies, but the record abundantly shows that she did not even consider trying to exercise any privileges under them. It would have been unnatural had she done so. She regarded the policies as belonging to her son alone. That is the way both mother and son intended them, and the way they would have been expressed had the company agent carried out what he knew to be the wishes of the interested parties. The ends of justice require the refund of this tax.
The plaintiffs are entitled to recover the sum of $11,082.47* with interest as provided by law.
Howell, Judge; MaddeN, Judge; Whitaker, Judge; and Littleton, Judge, concur.

As amended February 24, 1950.