**FRIED et al. v. GRANGER.**
Civ. A. No. 8920.

United States District Court
W. D. Pennsylvania.
June 13, 1952.

Sam R. Keller, Leonard Shapiro, Pittsburgh, Pa., for plaintiffs.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

STEWART, District Judge. ·

The parties have stipulated most of the pertinent facts in this case. They have attached to their stipulation three affidavits setting forth what certain witnesses would testify if called and have submitted cancelled checks purporting to show payments of the premiums of the insurance policy in question. From these sources we find the following facts:

## Findings of Fact.

1. This matter arises under the Internal Revenue Laws of the United States by reason of the rejection of a claim for refund by the Commissioner of Internal Revenue in the amount of $932.22, together with interest, filed by the plaintiffs for the alleged overpayment of Federal estate taxes in the Estate of Henry Fried, deceased.

2. Morris Fried and Rose Moskowitz, the plaintiffs, were the executors of the estate of Henry Fried, who died on May 16, 1944, a resident of McKeesport, Pennsylvania. His will was probated in the Orphans' Court of Allegheny County, Pennsylvania, at No. 3611 of 1944.

3. On or about August 2, 1945, the plaintiffs filed a Federal Estate Tax Return indicating a tax of $4,561.97, which was paid to Stanley Granger as the duly qualified Collector of Internal Revenue for the 23rd District of Pennsylvania.

4. Thereafter an audit of the return was made by the Commissioner's office and a deficiency in Estate Tax of $4,631.80 was determined, which additional tax was paid, together with interest in the sum of $233.87, or a total of $4,865.67, on June 19, 1946.

5. On or about April 4, 1929, the decedent, Henry Fried, made application with the New York Life Insurance Company for two policies of life insurance, one in the amount of $20,000 naming the decedent's estate as beneficiary, and one in the amount of $5,000 naming decedent's grandson, Merle Jack Moskowitz, a minor as beneficiary.

6. A policy, No. 16–610–888, in the sum of $5,000, was issued by the New York Life Insurance Company on April 10, 1929 on the life of Henry J. Fried, naming Merle J. Moskowitz, grandson of the insured, as beneficiary. It is this policy which is involved in this action.

7. On or about August 17, 1932, January 20, 1936 and February 10, 1942, loans were made by the New York Life Insurance Company on this policy. These loans were applied for and were granted in the name of the insured. Joseph Moskowitz signed the name of the insured on the loan applications which were obtained for the purpose of paying premiums.

8. Upon the death of the decedent, the policy in the possession of Joseph Moskowitz, father of the minor beneficiary, was surrendered to the New York Life Insurance Company and they paid the net amount of $3,852, being the face amount less the premium loans, to Joseph Moskowitz as trustee for Merle J. Moskowitz, in accordance with the beneficiary endorsements on the policy.

9. Decedent, Henry Fried, retained the power under the policy to change the beneficiary, to surrender or cancel the policy, to assign the policy and obtain from the insurer a loan against the surrender value of the policy.

10. Joseph Moskowitz had possession of the policy at all times after its issue and

paid all premiums thereon prior to the death of the insured.

11. This policy was included in the Estate Tax Return filed by the Executors and the Federal Estate tax paid thereon. The claim for refund requested the return of the tax paid by reason of such inclusion, which tax amounts to $932.22.

## Conclusions of Law.

1. This suit arises under the Internal Revenue Laws of the United States and this Court has jurisdiction under Section 1340 of Title 28 of the United States Code.

2. Under § 811(g) (2) of Title 26 of the United States Code, the amount receivable by all beneficiaries other than the executor of the decedent's estate as insurance under policies upon the life of the decedent "(A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death *any of the incidents of ownership*, exercisable either alone or in conjunction with any other person," (emphasis added) is includable in the decedent's gross estate for the purposes of the Federal Estate Tax.

3. "Incidents of ownership" are defined in Treasury Regulations 105, Section 81.27, as amended by T.D. 5239, Appendix, as including "the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, or revoke an assignment, to pledge it for a loan, or to obtain from insurer a loan against the surrender value of the policy, * * *".

4. Since under the circumstances of this case the decedent retained the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign the policy and the power to obtain from the insurer a loan against the surrender value of the policy, the decedent did retain incidents of ownership in the policy irrespective of the fact that he neither retained possession of the policy nor paid any of the premiums thereon.

5. Therefore, the policy in question is includable in the gross estate of the decedent to the extent of the amount receivable by the beneficiary.

## Discussion.

It seems to us that there has not been a sufficient showing here that the decedent insured intended to relinquish control over the policy or that he actually did relinquish control over it. While the evidence establishes that he neither retained possession of the policy nor paid the premiums thereon, it did not establish that he had relinquished all incidents of ownership. On the contrary, he did retain the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign the policy and the power to obtain from the insurer a loan against the surrender value of the policy. There can be no question that the insured had these powers initially and there isn't a sufficient showing that he ever relinquished any of them. Two changes of beneficiary were made; nothing affirmatively appears to establish that anyone other than the insured made them so we infer that he did. Plaintiffs argue that these changes were merely formal in nature and that the beneficial or equitable owner remained the same. Even if these were mere formal changes, they do establish that the insured retained the *power* to change the beneficiary.

On three separate occasions, loans were applied for and were granted in the name of the insured. Joseph Moskowitz signed the name of the insured on the loan applications. This supports the conclusion that Joseph Moskowitz recognized that the insured had retained this incident of ownership.

A further circumstance in this case supports our conclusion. The procedure prescribed in the policy for assignment was not followed. An affidavit submitted by the insurance agent who sold the policy to the insured is to the effect that the insured told him to deliver the policy to Joseph Moskowitz. If an assignment had been contemplated at that time, it seems likely that there would have been some discussion con-

cerning it between the agent and the insured and that the prescribed procedure would have been followed.

We concluded, therefore, that the insured did retain the powers set forth above. Plaintiffs rely on the case of United States v. Burgo, 3 Cir., 1949, 175 F.2d 196, and the case of National Metropolitan Bank of Washington v. United States, 1950, 87 F. Supp. 773, 115 Ct.Cl. 396, to support their contention that the insured retained no incidents of ownership. Although these cases contain language which tends to support plaintiff's contention, they do not do so, in substance, and they are distinguishable from this case.

■ The question of whether the insured has retained any incidents of ownership is one of fact. Both of the cases cited by plaintiffs recognize this proposition. In National Metropolitan Bank of Washington v. United States, supra, the court stated that from the evidence there could be no doubt that both the insured and the insured's son intended the policy to be the son's and his alone. This was a determination of fact. In United States v. Burgo, supra, the Court of Appeals held merely that the district court's finding of fact that the insurance policies were the sole and exclusive property of the beneficiary rather than the insured was not clearly erroneous under the evidence.

Although the trial courts in the two cases cited by plaintiffs arrived at a determination of fact that the insured was not the owner of the policy, it is obvious that these findings are not binding here since we are dealing primarily with a question of fact as distinguished from one of law. Certainly, neither of these cases stands for the legal proposition that possession and payment of premiums are conclusive of ownership as plaintiffs argue. In each of these cases, there was evidence in addition to possession and payment of premiums which supported the finding of ownership in one other than the insured. In the National Metropolitan Bank case, supra, the beneficiary caused the policies to be taken out

and there were statements by the insured to a disinterested third party to the effect that the policies belonged to the son, and there was further evidence to the effect that when the policies were delivered to the insured for safekeeping during the period of the beneficiary's Army service, the insured placed them in an envelope in her safe-deposit box and wrote the beneficiary's name thereon. No such facts were shown to exist in the case before us. Likewise, in the Burgo case, there was evidence that the application for the insurance was made jointly by the insured and the beneficiary. It is clear that the evidence relating to ownership in one other than the insured in the cases cited by plaintiffs was much stronger than that in the case before us. In any event, we concluded, as a matter of fact, that the insured did retain the powers set forth heretofore.

■ Whether these powers constitute incidents of ownership under Section 811 (g) (2) is the remaining question. While the statute does not define "incidents of ownership", the committee reports [1], after stating that there "is no specific enumeration of incidents of ownership" for the reason that "it is impossible to include an exhaustive list", proceed to itemize the following examples: "the right of the insured or his estate to the economic benefits of the insurance, *the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it,* the power to revoke an assignment, the power to pledge the policy for a loan, or *the power to obtain from the insurer a loan against the surrender value of the policy.*" (Emphasis added.) These committee reports, in listing examples of incidents of ownership, adopted practically verbatim the language of the Treasury Regulations promulgated under existing and prior sections of the code. The latest regulations are Treasury Regulations 105, Section 81.27, as amended by T.D. 5239, 1943 C.B. 1092, and "incidents of ownership" are there defined as including "the right of the insured or his estate to its economic benefits, *the power*

1. H.R.Rep.No.2333, 77th Cong., 2d Sess., p. 163; Sen.Rep.No.1631, 77th Cong., 2d Sess., p. 235.

568

*to change the beneficiary, to surrender or cancel the policy, to assign it,* to revoke an assignment, to pledge it for a loan, or *to obtain from the insurer a loan against the surrender value of the policy * * *".* (Emphasis added.)

We conclude that Congress intended that the term "incidents of ownership" include the powers which we have here found to have been retained by the insured. We must, therefore, enter judgment for the defendant since under § 811(g) (2), the policy was includable in the gross estate of the decedent insured.

■ Plaintiffs, in their brief, ask us to allow a refund for the overpayment of estate taxes by reason of an additional deduction from the gross estate for reasonable attorney's fees and expenses incurred in maintaining this litigation. It is clear that an estate is normally entitled to such a deduction. Cleveland v. Higgins, 2d Cir., 1945, 148 F.2d 722; Barclay v. U. S., D.C.W.D. Pa.1947, 73 F.Supp. 816. See 1 Paul's Federal Estate and Gift Taxation, § 11.16, and the cases cited thereunder. However, aside from the fact that there is no allegation in the complaint relating to this matter, there is no evidence from which we can determine the attorney's fees or the expenses incurred in connection with this litigation. We cannot consider the plaintiffs' request under the present state of the record.