ESTATE OF MARSHAL L. NOEL, DECEASED, WILLIAM H. FRANTZ AND RUTH M. NOEL, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90028. Filed November 28, 1962.

*Harry Norman Ball, Esq.*, and *Edward F. Merrey, Jr., Esq.*, for the petitioners.

*Albert Squire, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The $125,000 proceeds of the two insurance policies were paid over to the decedent's widow as a consequence of his death. The issue before us is whether such proceeds were includable in his gross estate under section 2042 of the Internal Revenue Code of 1954 which provides:

The value of the gross estate shall include the value of all property—

\*    \*    \*    \*    \*    \*    \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*

1. At the outset we are met by petitioner's contention that the policies in question are not "policies on the life of the decedent" within the meaning of the statute. Petitioner argues that these policies are of the type often characterized as "accident insurance" or "flight insurance," and do not possess many of the features of what is commonly referred to as "life insurance." But the question raised is no longer open.

A similar contention was rejected some 33 years ago in *Leopold Ackerman,* 15 B.T.A. 635, where it was held that amounts paid on account of accidental death under accident policies were amounts received "as insurance under policies taken out by the decedent upon his own life" within section 302(g) of the Revenue Act of 1924. The 1954 Code before us, although significantly different in other respects, is substantially identical in relation to the question whether the accident policies constitute "insurance \* \* \* on the life of the decedent." While recognizing that there are distinctions between life insurance and accident insurance, *Ackerman* nevertheless held that both may be "upon the life" of the insured. "In each case the risk assumed by the insurer is the loss of the insured's life, and the payment of the insurance money is contingent upon the loss of life." 15 B.T.A. at 637. It is too late to raise the issue herein. The matter has been settled for too long a period to warrant reexamination. The statutory provisions involved are substantially identical as they relate to this question. We follow *Ackerman* here.

2. We pass therefore to consider whether the insurance proceeds are otherwise covered by section 2042(2). Our inquiry is simply whether

in relation to these policies, "the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person." These provisions appeared for the first time in the 1954 Code. Whether the policies were "taken out" by the decedent or whether he paid the premiums are no longer the touchstone of taxability under the new statute. Both the House and Senate Committee reports accompanying the new legislation contained the following statement:

This section revises existing law so that payment of premiums is no longer a factor in determining the taxability under this section of insurance proceeds. Insurance proceeds payable to the executor will continue to be taxed as under existing law. This section also requires the inclusion in the decedent's estate of insurance proceeds receivable by all other beneficiaries under a policy on the decedent's life with respect to which the decedent at death possessed any of the incidents of ownership exercisable either alone or in conjunction with any other person. * * *

H. Rept. No. 1337, 83d Cong., 2d Sess., p. A316; S. Rept. No. 1622, 83d Cong., 2d Sess., p. 472.

Did the decedent herein possess any of the incidents of ownership in the two policies before us? An examination of both policies requires an unequivocally affirmative answer. In each policy there is a paragraph entitled "Change of Beneficiary," in each of which the following appears:

Change of Beneficiary: The right to change of beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this policy or to any change of beneficiary or beneficiaries, or to any other changes in this policy.

It is argued by petitioner that the foregoing provision in the policies was merely "boiler plate," that the decedent did not desire any such right, and that he could not have obtained the policies without such provision. Granted that all this be true, it does not advance petitioner's position. Whether or not the right to change the beneficiary was "boiler plate," it was part of the contractual relationship with each insurance company and defined a legal right of the decedent.[1] The right to change beneficiaries is one of the recognized "incidents of ownership," and accordingly the statute is applicable.

Nor is a different result required by reason of the contention that the decedent's wife paid the premiums or that the policies were "assigned" to her. To be sure, we heard testimony that she paid the premiums, but we were not entirely convinced, and since taxability under the 1954 Code does not depend upon who paid the premiums,

---

[1] This is not a case of erroneous provisions in the policies or the inclusion of provisions which resulted from unauthorized action by an insurance agent, which might have been corrected by reformation of the policies after they were issued. Cf. *Schongalla* v. *Hickey*, 149 F. 2d 687 (C.A. 2), and *National Metropolitan Bank* v. *United States*, 87 F. Supp. 773 (Ct. Cl.), relied upon by petitioner

we have not made any finding one way or the other as to this matter.[2] To establish an assignment, the decedent's wife testified that the decedent told the clerk at the airport to give the policies to her, that they "now belonged" to her, and that "he had nothing more to do with them." We think that the delivery of the policies to her in such circumstances hardly establishes an assignment. It must be recalled that the policies contained provisions for insurance in respect of various bodily injuries short of death, and in such circumstances we are not convinced that petitioner intended to part with all rights in the policies. Rather, the testimony, even if strictly accurate, suggests merely that the decedent was indulging in a common practice of giving physical possession of the policies to the beneficiary so that, in the event of a fatal accident, she would be in a position to assert her rights under the policies. We do not find that by these oral statements, the decedent intended to make any irrevocable disposition of all his rights under the policies,[3] even assuming that he could legally do so in that manner.[4]

Petitioner makes the further contention that the right to change the beneficiary was illusory since, as a practical matter, the decedent would have been unable to exercise that right during flight. The argument proves too much. The same would be true with respect to any policy of life insurance, and the mere fact that the insured at the moment of death might be temporarily incapacitated from exercising his rights has never been thought to vitiate the effect of such retained rights. Cf. *Estate of Edward L. Hurd*, 6 T.C. 819, affirmed 160 F. 2d 610 (C.A. 1); *Estate of Virginia H. West*, 9 T.C. 736, affirmed 173 F. 2d 505 (C.A. 8); *Estate of Charles S. Inman*, 18 T.C. 522, reversed on other grounds 203 F. 2d 679 (C.A. 2); Rev. Rul. 61–123, 1961–2 C.B. 151. Moreover, it must be remembered that the policies were not limited to accident on a one-way voyage; they covered a *round trip*, and in the normal course the right to change the beneficiary would have been meaningful prior to commencement of the return trip. Of course, decedent's wife was in possession of the policies, and to the extent that her acquiescence may have been necessary in order to effec-

---

[2] In any event, in this connection, even if it be assumed that she paid the premiums, cf. *Fried* v. *Granger*, 105 F. Supp. 564 (W.D.Pa.), affirmed per curiam 202 F. 2d 150 (C.A. 3); *Hall* v. *Wheeler*, 174 F. Supp. 418 (D. Maine); *Estate of Michael Collino*, 25 T.C. 1026.

[3] Compare in this respect *Franklin Life Insurance Company* v. *Falkingham*, 229 F. 2d 300 (C.A. 7), where the physical delivery of a policy to the insured's wife was held not to be an assignment even where such delivery was accompanied by the following declaration (p. 304): "Here, Honey, is your insurance. Take it and keep it. You are the *beneficiary*. And never let it go, regardless of what happens to me. It is yours."

[4] We accordingly do not consider whether such alleged oral assignment would have been valid under the law of New York where the delivery of the policies occurred and where such assignment was alleged to have taken place. Cf. *McNamee* v. *Griffin*, 285 App. Div. 886, 137 N.Y. Supp. 749, affirmed 309 N.Y. 864, 131 N.E. 2d 284; *Katzman* v. *Aetna Life Ins. Co.*, 285 App. Div. 446, 137 N.Y. S. 583, reversed 309 N.Y. 197, 128 N.E. 2d 307.

tuate a change of beneficiary [5] such circumstances would not render the statute inapplicable. For, the statute speaks in terms of incidents of ownership "exercisable either alone or in conjunction with any other person." And the unrestricted words "in conjunction with any other person" include persons having an adverse beneficial interest. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U.S. 85; *Hall* v. *Wheeler*, 174 F. Supp. 418, 421 (D. Maine).

We hold that the proceeds of the two policies in controversy are includable in the decedent's gross estate.

*Decision will be entered under Rule 50.*

---

[5] The change of beneficiary clause in both policies provides, however, that "the consent of the beneficiary * * * shall not be requisite * * * to any change of beneficiary * * *."