JOYCE KARBACH WATSON, TRANSFEREE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Watson v. Commissioner
Docket Nos. 2039-75, 2318-75, 2320-75, 2693-76.
United States Tax Court
T.C. Memo 1977-268; 1977 Tax Ct. Memo LEXIS 171; 36 T.C.M. (CCH) 1084; T.C.M. (RIA) 770268; August 15, 1977, Filed Robert W. Simmer, for the petitioners in docket Nos. 2039-75, 2320-75, and 2693-76. Joe H. Reynolds and Henry A. Sauer, Jr., for the petitioner in docket No. 2318-75. William T. Overton, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined an estate tax deficiency in the amount of $172,476.76 against the Estate of Thomas Douglas Watson, Jr., petitioner in docket No. 2320-75, and determined that W. Harold Sellers, petitioner in docket No. 2318-75, and Joyce Karbach *172 Watson, petitioner in docket No. 2039-75, were each liable as transferees of the estate for the same amounts. Respondent further determined a gift tax deficiency of $107,663.40 for the calendar year 1970. Since respondent has conceded the gift tax issue on brief, the issues for decision are (1) whether Thomas Douglas Watson, Jr., possessed incidents of ownership of a life insurance policy on his life at the time of his death, for purposes of section 2042; [2] (2) whether his estate is entitled to a deduction for a claim against, or an indebtedness of, the estate for the proceeds of that policy; and (3) whether petitioners W. Harold Sellers and Joyce Karbach Watson are liable as transferees of the decedent's estate for any estate tax due therefrom. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Thomas Douglas Watson, Jr. (decedent) died on April 18, 1970, a resident of Houston, Texas. No Last Will and *173 Testament of the decedent was presented for probate and no person has ever been appointed as executor or administrator of the decedent's estate. [3] Joyce Karbach Watson, decedent's widow, filed a Federal estate tax return for the estate as community survivor under Texas Prob. Code, section 160 (1960), with the district director of internal revenue, Austin, Texas. At the time the petitions were filed, Mrs. Watson was a resident of Houston, Texas. Petitioner W. Harold Sellers (hereinafter referred to as "Sellers") also resided in Houston, Texas, at the time the petitions were filed. At the time of his death, decedent was licensed to practice medicine. For a number of years prior to his death, decedent had been associated in a variety of business ventures with Sellers under an oral partnership agreement. No partnership return was filed for those activities involving only Sellers and decedent, although such returns were filed when other investors participated in a venture. The Sellers-Watson partnership made investments in *174 banking, savings and loan associations, concrete companies, and various types of real estate. A substantial amount of indebtedness was incurred in connection with such investments. Sometime during 1967, Aubrey Gholson, an agent for the North America Life Insurance Co. (hereinafter NALIC) approached decedent in order to interest him in purchasing life insurance. Decedent and Sellers discussed the need for life insurance, and they agreed that each would apply for life insurance with a face amount of one million dollars, with Sellers to be the owner of the policy on decedent's life and decedent designated the owner of the policy on Sellers' life. The insurance agent, Gholson, who solicited the insurance was instructed to have the policies issued in accordance with such agreement. Sellers agreed to pay the insurance premiums on the policy insuring decedent's life and decedent agreed to pay the premiums on the policy insuring Sellers' life. After one year, Sellers and decedent agreed that the partnership would pay the premiums on both policies. The insurance premiums were paid accordingly. Sellers and decedent each applied to NALIC for one-year renewable and convertible life *175 insurance in the face amount of $1,000,000 on December 11, 1967, and February 23, 1968, respectively. The policy on Sellers' life was issued on December 29, 1967, and the policy on decedent's life was issued on April 17, 1968. North America Policy No. 15321 was issued on decedent's life. On the front page of the policy, it is stated that one million dollars will be paid to "HAROLD SELLERS, PARTNER OF THE INSURED (or such other beneficiary or beneficiaries as may be designated by the Insured as hereinafter provided)." Under the heading "Benefits and Provisions," the policy stated that the insured was empowered to change the beneficiary unless such power was released by the insured. It further stated that "[the] Insured may, at all times, without the consent of any designated beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred by this policy." North America Policy No. 15321 was issued on Sellers' life, the terms of which were identical in all material respects with Policy No. 15221 except that the designated beneficiary was "THOMAS D. WATSON, JR., M.D., PARTNER OF THE INSURED." Neither decedent nor Sellers ever formally released any of *176 the powers given to him in the policy on his life nor did either of them ever exercise any of such powers. The policies were delivered to Sellers and decedent at their place of business, and each signed a receipt for the policy in which he was named as the insured. At no time did decedent or Sellers notify NALIC that the policies contained provisions contrary to their instructions to Gholson or were in any respect incorrect. On December 28, 1968, the policies were renewed for an additional five years. The premiums for the first year of the renewal were paid out of a partnership bank account and were charged on the partnership books as a partnership expense. No further premiums were paid after that first year. In addition to Policy No. 15321, there were issued, and in effect at his death, seven life insurance policies on the life of decedent naming Mrs. Watson as beneficiary. The proceeds of these policies, in the amount of $943,551.56, were paid to Mrs. Watson. One half of this amount, representing decedent's community interest in the proceeds, was included in his gross estate for estate tax purposes. Because of conflicting beneficiary designations on the applications *177 signed by decedent, both Sellers and Mrs. Watson claimed that they were entitled to the proceeds of Policy No. 15321. The insurance company, admitting its liability under the policy, filed an interpleader action in the 190th Judicial District Court of Harris County, Texas, to determine who was entitled to the proceeds. The court ordered that the proceeds of the policy, less attorneys' fees, in the amount of $985,052 be paid to Sellers and they were so paid. Sellers used the proceeds to pay debts of the partnership. At the time of decedent's death, the Sellers-Watson partnership was insolvent. In the notice of deficiency, respondent determined that decedent's community interest in the proceeds of Policy No. 15321 should be included in his gross estate, on the ground that he possessed incidents of ownership in that policy at the date of his death. He further determined that Sellers and Mrs. Watson were liable as transferees of the estate. ULTIMATE FINDING OF FACT At the date of death, decedent did not possess any of the requisite incidents of ownership in Policy No. 15321. OPINION Respondent having conceded the issue of the gift tax deficiency determined against Joyce, *178 the primary and threshold question herein is whether decedent possessed the incidents of ownership of the $1,000,000 policy of insurance on his life requisite to the inclusion of the proceeds of that policy in his gross estate under section 2042(2). [4] If that question is answered in the negative, there will be no need to consider the further questions of an offsetting deduction by the estate of a claim or indebtedness under section 2053 or of the extent to which Joyce and/or Sellers are liable as transferees for any deficiency in estate tax. The parties herein accept the well-established proposition that the broad powers reserved *179 to a decedent in a policy, including the power to change the beneficiary of the policy, are ordinarily considered incidents of ownership. Section 20.2042-1(c)(3), Estate Tax Regs.; Piggott's Estate v. Commissioner,340 F. 2d 829 (6th Cir. 1965), affg. T.C. Memo. 1963-61. Petitioners argue that decedent did not possess any incidents of ownership in the policy, despite the fact that he was the owner under the terms of the policy, relying primarily on the contention that the inclusion of such terms was contrary to the instructions given to, and therefore a mistake on the part of, the insurance company, with the result that the "policy facts" should not control under the exception carved out in United States v. Rhode Island Hospital Trust Company,355 F. 2d 7, 13 (1st Cir. 1966). Respondent recognizes this exception but contends that it is inapplicable on the facts herein and that the so-called "policy facts" rule enunciated in Commissioner v. Estate of Noel,380 U.S. 678 (1965), and United States v. Rhode Island Hospital Trust Company,supra, requires that his determination be sustained. For reasons *180 hereinafter set forth, we think that the exception to the "policy facts" rule should apply herein, with the result that decedent did not possess the incidents of ownership requisite to the inclusion of the proceeds of the insurance policy in his gross estate under section 2042. We preface our analysis of the facts herein with two observations. First, it is clear that the "policy facts" rule envisages a determination that the decedent had the legal power to exercise the requisite incidents of ownership. See Commissioner v. Estate of Noel,supra at 684; Estate of Bartlett v. Commissioner,54 T.C. 1590, 1597-1598 (1970). Indeed, the existence of such a legal power is an essential underpinning of the exception to the "policy facts" rule; if it were not, there would have been no need to carve out any exception. Naked power alone is insufficient. See Estate of Fuchs v. Commissioner,47 T.C. 199, 204 (1966). Second, although the question whether incidents of ownership found to be possessed by the decedent are sufficient to bring *181 section 2042 into play is a question of Federal law, the question of what, if any, incidents of ownership the decedent had, and his legal power in respect thereof, ultimately depends upon an analysis of the facts in light of applicable state law. Morton v. United States,457 F. 2d 750 (4th Cir. 1972); Estate of Dawson v. Commissioner,57 T.C. 837, 840 (1972), affd. 480 F. 2d 917 (3d Cir. 1973); section 20.2042-1(c)(5), Estate Tax Regs. See also United States v. Rhode Island Hospital Trust Company,supra at 11. The testimony of Gholson, the insurance agent, and Sellers confirms that, from the outset, it was intended that Watson was not to own the policy on his life and that Sellers was not to own the policy on his life. Sellers testified convincingly that the agreement between him and Watson was that they would "apply for a million dollars of life insurance each, with me being the owner of the policy on Dr. Watson's life and he being the owner of the policy on my life" and that he did not discover that the policies had not been issued as intended until after Watson's death. Gholson also testified categorically *182 that "it was my understanding that each would own their own policies, one against the other" and that decedent's instructions to him were "that Mr. Sellers would own the policy on * * * Dr. Watson and that Dr. Watson would own the policy on him" and that "each was to be the owner of the other policy." We are satisfied that any ordinary interpretation would equate the words "owner" or "own" with "incidents of ownership." Gholson further testified that, at the time of the transactions involved herein, he was inexperienced and did not understand the difference between ownership of policy rights and ownership of policy proceeds and that he believed that the designation of Sellers as beneficiary of the policy in question in his capacity as "Partner" was in accord with the instructions given him in respect of ownership of both policies. In this connection, we also note that Sellers testified that, although the partnership was not to be the direct beneficiary of the proceeds of the policy, he and decedent agreed that the premiums in the second year of the existence of both policies should be paid out of partnership funds and that the proceeds were to be used for partnership purposes. Sellers' *183 actual use of the proceeds of the policy on decedent's life to pay partnership debts confirms this agreement. Finally, we think it important that the instructions to Gholson were never countermanded and that at no time, during the existence of either policy, did either Sellers or decedent attempt to exercise any ownership rights, e.g., by borrowing or changing the beneficiary. In this respect, there is a crucial distinction from the situation which existed in United States v. Rhode Island Hospital Trust Company,supra, where the decedent was permitted to exercise the right to change the beneficiary accorded him by the terms of the policy. [5] See also Fried v. Granger,105 F. Supp. 564, 566 (W.D. Pa. 1952). We are satisfied that the foregoing combination of factual elements is sufficient to bring this case within the exception to the "policy facts" rule carved out by United States v. Rhode Island Hospital Trust Company,supra, with the result that *184 Sellers, and not the decedent, should be treated as the owner of the policy in question at its inception. We have found nothing in the applicable law of Texas which would dictate a contrary conclusion. On the contrary, what little Texas authority exists tends to support our conclusion. See Smith v. Schoellkopf,68 S.W. 2d 346 (Tex. Civ. App. 1934). Under this circumstance, the decided cases which the First Circuit in United States v. Rhode Island Hospital Trust Company,supra, cited as representing the kind of situation it had in mind in articulating the exception become particularly significant. Schongalla v. Hickey,149 F. 2d 687 (2d Cir. 1945); National Metropolitan Bank of Washington v. United States,87 F. Supp. 773 (Ct. Cl. 1950). In these cases, both the Second Circuit and the Court of Claims dealt flexibly with the underlying facts, found that the policies in question were not issued in the form originally intended by the parties, and resolved the issue of includability of the proceeds for estate tax purposes on the basis of what should have been done rather than what was done. We see no reason *185 not to follow the same path in the instant situation, at least where, as is the case herein, the parties were unrelated and the proceeds of the insurance were intended to be, and were in fact, used exclusively for business purposes. Our action in so doing accords with the disposition of the issue of possession of the requisite incidents of ownership under section 2042 in comparable business contexts. First National Bank of Birmingham v. United States,358 F. 2d 625 (5th Cir. 1966); Estate of Fuchs v. Commissioner,supra;Estate of Infante v. Commissioner,T.C. Memo. 1970-206. Indeed, the factual situation in Estate of Fuchs v. Commissioner,supra, is strikingly similar to that involved herein. [6]
*186 In sum, on the basis of the entire record herein, we hold that, at his death, the decedent did not have the legal power to exercise any incidents of ownership within the meaning of section 2042. We state our holding in the negative because that is all that is required by section 2042 and because the record is not entirely clear as to whether Sellers continued to be the owner of the policy after the first year or whether the partnership became the owner at the end of that year and remained such owner at the time of decedent's death. If the latter is the case, the decedent would still not be considered as possessing the requisite incidents of ownership merely by virtue of his control as a 50-percent partner. Estate of Knipp v. Commissioner,25 T.C. 153, 168-169 (1955), affd. on other issues 244 F. 2d 436 (4th Cir. 1957). Indeed, respondent does not argue the legal issue that the ownership by the partnership would be sufficient to require the inclusion of the proceeds of the policy under section 2042, resting his position herein simply on the ground that petitioners have not sustained their burden of proof on the factual issue of decedent's ownership. *187 Under our approach, we need not decide the further factual issue as to whether Sellers or the partnership owned the policy at the time of decedent's death, since it is enough that, at that time, decedent did not possess the requisite incidents of ownership. Decision will be entered under Rule 155 in docket No. 2320-75.
Decisions will be entered for the petitioners in docket Nos. 2039-75, 2318-75, and 2693-76. Footnotes
1. Cases of the following petitioners were consolidated for trial, briefing, and opinion: W. Harold Sellers, docket No. 2318-75; Estate of Thomas Douglas Watson, Jr., Deceased, Joyce Karbach Watson, Community Survivor, docket No. 2320-75; and Joyce Karbach Watson, docket No. 2693-76.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise noted.↩
3. The executors named in the only instrument purporting to be decedent's last will and testament have refused or failed to act in such capacities.↩
4. That section provides in relevant part that: The value of the gross estate shall include the value of all property-- * * *
(2) Receivable by other beneficiaries.--To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. * * *↩
5. The fact that neither Sellers nor decedent examined the policies after they were delivered and before decedent's death is, in our judgment, without significance.↩
6. We note that, in the past, courts have been troubled by the problem of potential double taxation in a situation such as is involved herein (i.e., both the insurance proceeds and the partnership interest includable in the gross estate) -- a problem which fortunately has now been judicially resolved. See discussion and cases cited in Lowndes, Kramer & McCord, Federal Estate and Gift Taxes 332 (3d ed. 1974); Eliasberg, " IRC Section 2042 -- The Estate Taxation of Life Insurance: What is an Incident of Ownership?" 51 Taxes 91↩, 102 (1973). The problem is nonexistent in the instant case because the Sellers-Watson partnership was insolvent (and decedent's interest therefor of no value) even after the application of the proceeds of the policy on decedent's life to the partnership debts. But this fortuitous circumstance should not affect the analysis of the underlying issue.